[No. H031714. Sixth Dist. June 30, 2008.]

LOS ALTOS GOLF AND COUNTRY CLUB et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

**COUNSEL**

Mitchell, Herzog & Klingsporn and Gregory K. Klingsporn for Plaintiffs and Appellants.

Berliner Cohen, Shannon N. Cogan and Jolie Houston for Defendants and Respondents.

**OPINION**

**ELIA, J.**—In this appeal Thomas Burns, trustee of a family trust, and the Los Altos Golf and Country Club (LAGCC) seek review of an order sustaining the demurrer of the City of Los Altos (City) and County of Santa Clara (County) in appellants' action to recover fees paid for sewer service provided by the City. Appellants assert error in the trial court's determination that payment "under protest" was necessary before pursuing a claim for refund of fees asserted to be invalid. We find no error and affirm the judgment of dismissal.

*Background*

Because this appeal arises from the sustaining of a demurrer, we set out the underlying facts as alleged in the operative pleading as well as the procedural history of the litigation. LAGCC and Burns each own property in an unincorporated area of Santa Clara County. Under a contract between the County and the City of Los Altos, County residents could use the City's sewage transmission and treatment facilities and services. The City had the right to set sewer service charges for County residents in unincorporated areas, which could be up to twice the amount charged for City residents. The charges were collected by the County through its tax collector and appeared on residents' property tax bills.

According to appellants' first amended complaint, charges billed to property owners outside City limits were between 70 percent and 100 percent higher than those imposed on City residents. Appellants paid the sewer assessments for 2002 through 2006, but in August 2006 they sought a refund from the city council for the charges exceeding those paid by City residents. Appellants relied on Los Altos Municipal Code (LAMC) chapter 10.12 and Revenue and Taxation Code section 5096 et seq. The city council rejected the claims, and appellants then filed this action.

Appellants' first amended complaint asserted class action allegations on behalf of all property owners outside City limits who were charged more for sewer service than City residents. In the first cause of action for declaratory relief, they alleged that the excess charges violated article XIII D of the California Constitution, specifically section 6, subdivision (b).[1] The second cause of action also requested declaratory relief: Appellants alleged that the fee imposed on them was contrary to Health and Safety Code sections 5040, 5043, and 5471, which required sewer service charges to be "just, fair and equitable to all users of the sewer facilities." In the third cause of action appellants sought a refund of the "geographically discriminatory" surcharge pertaining to the period from the 2002–2003 year through the 2005–2006 year: Burns sought $787.18, while LAGCC sought $24,374.59. The fourth cause of action was asserted against the City, requesting a writ of mandamus directing the City to stop collecting the excess sewer charges.

Respondents demurred to all causes of action on the ground that appellants had not perfected a claim for refund, because they had not paid the fees under protest. They further asserted that appellants were not entitled to equitable relief or a writ of mandamus because they had an adequate remedy at law. After receiving argument on the question of whether payment under protest was a prerequisite to suit, the court agreed with respondents and sustained their demurrer without leave to amend.[2]

## Appealability

Appellants filed their notice of appeal from the order sustaining the demurrer, a nonappealable order. Respondents urge this court not to consider the merits and dismiss the appeal. Respondents properly acknowledge, however, that the court subsequently did file a judgment of dismissal in this case, rendering the notice of appeal only premature. Because a judgment of dismissal has actually been entered, we will liberally construe the appeal to have been taken from the judgment of dismissal. (See Cal. Rules of Court, rules 8.100(a)(2), 8.104; see also *Groves v. Peterson* (2002) 100 Cal.App.4th

---

[1] Article XIII D of the California Constitution was the result of Proposition 218, the Right to Vote on Taxes Act, adopted by the voters in the November 1996 election. (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) text of Prop. 218, § 1; reprinted as Historical Notes, 2A West's Ann. Const. (2008 supp.) foll. Cal. Const., art. XIII D, p. 99.) Among its provisions is the limitation expressed in section 6, subdivision (b), which states that "A fee or charge shall not be extended, imposed, or increased by any agency unless . . . [¶] (1) Revenues derived from the fee or charge shall not exceed the funds required to provide the property related service. [¶] . . . [¶] (3) The amount of a fee or charge imposed upon any parcel or person as an incident of property ownership shall not exceed the proportional cost of the service attributable to the parcel."

[2] The court offered appellants the opportunity to amend, but they declined, pointing out that amendment would be futile, as they admittedly had not paid the charges under protest.

659, 666, fn. 2 [123 Cal.Rptr.2d 164]; accord, *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1263, fn. 3 [39 Cal.Rptr.3d 634].)

*Discussion*

### 1. *Standard and Scope of Review*

On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. (*Kamen v. Lindly* (2001) 94 Cal.App.4th 197, 201 [114 Cal.Rptr.2d 127].) We "give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479]; see *Kamen v. Lindly, supra,* 94 Cal.App.4th at p. 201.) In reviewing the demurrer, we also consider matters that may be judicially noticed. Furthermore, to the extent that the issues involve the interpretation of statutory provisions, we review the parties' arguments independently, as statutory construction is a question of law. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 870 [13 Cal.Rptr.3d 420].)

Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations. (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1397 [60 Cal.Rptr.3d 719].) Whether the plaintiff will be able to prove these allegations is not relevant; our focus is on the *legal* sufficiency of the complaint. (*Ibid.*; *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

The plaintiff bears the burden of demonstrating error by the superior court. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880 [6 Cal.Rptr.2d 151].) Our only task is to determine whether the complaint states a cause of action as a matter of law. (*Garcia v. Superior Court* (1990) 50 Cal.3d 728, 732 [268 Cal.Rptr. 779, 789 P.2d 960]; *Easton v. Sutter Coast Hospital* (2000) 80 Cal.App.4th 485, 490 [95 Cal.Rptr.2d 316].) To show entitlement to reversal the plaintiff must show that the complaint alleged facts sufficient to establish every element of each cause of action. If the plaintiff failed to plead, or if the defendants negated, any essential element of a particular cause of action, this court should uphold the sustaining of the demurrers. (*Kamen v. Lindly, supra,* 94 Cal.App.4th at p. 201.)

### 2. *The "Pay Under Protest" Requirement*

The fees charged users of the City's sewer services were set in accordance with chapter 10.12 of the City's municipal code. In article 6, "Use of the Tax

Roll," section 10.12.360, "Laws applicable," states: "All laws applicable to the levy, collection and enforcement of general taxes of the city including, but not limited to, those pertaining to the matters of delinquency, correction, cancellation, refund and redemption, are applicable to [sewer service] charges." In addition, section 10.12.230 of article 6 states: "When the city elects to use the tax roll on which general city taxes are collected for the collection of current or delinquent sewer service charges, proceedings therefor shall be had as now or hereafter provided therefor in Article 4, Chapter 6, Part 3, Division 5 of the Health and Safety Code of the state."

Division 5, part 3, chapter 6, article 4 of the Health and Safety Code,[3] to which LAMC section 10.12.230 refers, contains general provisions on sewers, including sections 5472 and 5473.8. Appellants rely on section 5473.8, which states (in language similar to LAMC, § 10.12.360): "All laws applicable to the levy, collection and enforcement of general taxes of the entity, including, but not limited to, those pertaining to the matters of delinquency, correction, cancellation, refund and redemption, are applicable to such charges . . . ."[4]

Section 5472, however, more specifically addresses challenges to sewer charges. This section provides: "After fees, rates, tolls, rentals or other charges are fixed pursuant to this article, any person may pay such fees, rates, tolls, rentals or other charges under protest and bring an action against the city or city and county in the superior court to recover any money which the legislative body refuses to refund. Payments made and actions brought under this section, shall be made and brought in the manner provided for payment of taxes under protest and actions for refund thereof in Article 2, Chapter 5, Part 9, of Division 1 of the Revenue and Taxation Code, insofar as those provisions are applicable."

■ Division 1 of the Revenue and Taxation Code governs property taxation, and part 9 of that division covers refunds of property taxes. Article 1 of chapter 5 (the chapter on tax refunds) prescribes the manner in which property tax refunds may be claimed: The person may either apply for a reduction in an assessment or submit a verified claim within four years "after

---

[3] All further statutory references are to the Health and Safety Code except as otherwise specified.

[4] Appellants also point to LAMC section 3.28.100, which states that "[c]laims for the refund of taxes imposed pursuant to the provisions of this chapter shall be governed by the provisions of Chapter 5 (commencing with Section 5096) of Part 9 of Division 1 of the Revenue and Taxation Code of the state." This municipal provision, however, expressly pertains to real property transfer taxes.

making of the payment sought to be refunded." (Rev. & Tax. Code, § 5097, subd. (a)(2).) Chapter 5, article 2, to which section 5472 of the Health and Safety Code refers, pertains to refund *actions* by taxpayers. Revenue and Taxation Code section 5140, the first section in that article, allows the taxpayer to bring an action in superior court against a county or city when that entity has "refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter." Neither article 1 nor article 2 of chapter 5 mentions payment under protest. Indeed, the legislative history of the relevant Revenue and Taxation Code provisions[5] indicates that the "pay under protest" refund requirements applicable to property taxes (§§ 5136–5143) were repealed.

Appellants contend that the procedures for obtaining a property tax refund described in division 1, part 9, chapter 5, article 1 of the Revenue and Taxation Code are likewise available to property owners seeking a refund of sewer charges. In their view, because section 5473.8 makes all laws pertaining to "general taxes" applicable to these fees, and because property tax refunds may be obtained through written claims without first paying under protest, the Revenue and Taxation Code provisions do not contain any such prerequisite for refunds of sewer payments.

■ We cannot subscribe to appellants' suggestion that there are various optional methods for obtaining refunds of sewer charges. Section 5473.8 only directs us to procedures for general taxes, as does LAMC section 10.12.360. There is no indication in section 5473.8 that it was intended to supersede section 5472, the more specific claim provision. In chapter 10.12 of its municipal code the City has made *all* laws relating to general city taxes applicable to sewer charges, and it specifically directs us to division 5, part 3, chapter 6, article 4 of the Health and Safety Code. In that article section 5472 allows a person to pay the charges *under protest* and then bring an action to recover any amount the entity has refused to refund, in accordance with division 1, part 9, chapter 5, article 2 of the Revenue and Taxation Code (§ 5140 et seq.), which governs refund *actions*. The plain language of section 5472 thus contemplates payment under protest, followed by an action if the payer is unable to secure a refund.

Appellants suggest that sections 5472 and 5473.8 can be "reconciled" by viewing each statute's applicability as dependent on the method of collection the entity has chosen. Citing *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 957 [5 Cal.Rptr.3d 520], they maintain that "[s]ection 5472 applies in general to Sewer Service Charges paid directly to

---

[5] By separate order we granted respondents' request to take judicial notice of this history.

the City, while section 5473.8 applies to that subset of Sewer Service Charges payments made when the levying entity (here, the City) has elected to add such charges to the general property tax rolls and has delegated the collection and enforcement of 'such charges' to the County Tax Collector." *Utility Audit* does not support that inference. There the court agreed with the defendant city that the sewer fees at issue were user fees, not taxes or special assessments. "User fees are amounts charged to a person using a service where the amount of the charge is generally related to the value of the services provided. [Citation.] As a general matter, sewer service fees are user fees. That overcharges were made in some instances does not change their characterization to that of a tax." (*Ibid.*) The court further distinguished general sewer service fees from those collected on the tax roll, noting that section 5473.8 applies only to the latter, a subset of sewer service fees in general. (112 Cal.App.4th at p. 957.) The *Utility Audit* court did not, however, have occasion to determine the applicability of section 5472 or decide whether that statute had any effect when sewer fees were collected on the tax rolls.

Appellants alternatively contend that the payment-under-protest language of section 5472—"any person *may* pay . . . under protest"—is permissive, not mandatory. This argument is undeveloped, however, and it is unsupported by any citation to authority. It is the challenge itself that is optional, not the method of raising that challenge. Of course users of sewer services *may* challenge excessive fees if they wish to do so; but the manner in which they assert that challenge is prescribed by the statute.

■ To the extent it is applicable, the same reasoning applies to section 5056, the statute cited by the trial court in ruling on the demurrer. Section 5056 is contained in article 7 of chapter 5 of part 3, of division 5, pertaining to sewer revenue bonds. In language identical in essential respects to section 5472, this statute allows "any person" to "pay [sewer rates] under protest and bring an action . . . to recover any money which the governing body refuses to refund." (§ 5056.) As in section 5472, the second sentence of the provision refers to division 1, part 9, chapter 5, article 2 of the Revenue and Taxation Code, discussed above. Thus, whether one looks to section 5472 or to section 5056, the outcome is the same. Both plainly state that a user of sewer services may challenge the fees imposed by the entity by paying under protest and then bringing suit in superior court.

Appellants finally argue that sections 5472 and 5056, which were adopted in 1949, "refer to a nonexistent procedure abandoned by the Legislature thirty years ago." They observe that in 1976 the Legislature retracted the requirement that property taxes be paid under protest (Rev. & Tax. Code, div. 1, pt. 9, ch. 5, art. 2, former §§ 5136–5143) and allowed instead a written

claim procedure as described in article 1, section 5097 of the Revenue and Taxation Code. In repealing the "pay under protest" requirement for property taxes, however, the Legislature did not choose to amend the sewer fee provisions of the Health and Safety Code.

Appellants argue that the applicable provisions are likely to mislead the average property owner. They assert that a "citizen reading section 5472 of the Health & Safety Code today would go to Article 2 of Chapter 9 of Division 1 of the Revenue & Taxation Code, begin reading at section 5140, and come to the obvious conclusion that the 'manner provided for payment of taxes under protest and actions for refund thereof in Article 2, Chapter 5, Part 9 of Division 1 of the Revenue and Taxation Code' refers to the written claim procedure set forth in that Article. To place the burden on a citizen to recognize that Article 2 of the Revenue & Taxation Code does not expressly contain a 'payment under protest' option, as it did in 1949, and that therefore she should locate an historical, pre-1976 version of that Article, is an unjust and unreasonable result."

We disagree. The ordinary citizen need not engage in complex and burdensome research to follow the legislative intent. A property owner who wishes to challenge sewer fees will readily see that the governing provisions are set forth in the Health and Safety Code, which continues to require payment under protest. The referenced division 1, part 9, chapter 5, article 2 of the Revenue and Taxation Code describes the procedures for bringing an action in superior court to obtain a property tax refund, including the filing of a verified claim *after* making the payment to be refunded. Section 5472 directs the property owner to follow those procedures only "insofar as those provisions are applicable."

We thus conclude that no intent to repeal section 5472 or section 5056 is apparent from the language of these statutes even when read in conjunction with the Revenue and Taxation Code provisions to which they expressly refer.[6] If the Legislature or the City wishes to eliminate the "pay under protest" requirement for disputing sewer fees, it can amend the applicable laws in a way that makes clear its intent. However, because the legislative enactments of both the state and the City continue to require payment under protest, appellants' action was foreclosed by their failure to follow the prescribed procedures. The trial court did not err in sustaining respondents' demurrer without leave to amend.

---

[6] It is therefore unnecessary to address the continued viability and applicability of *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53 [195 P.2d 1], cited by respondents in support of their position.

## *Disposition*

The judgment of dismissal is affirmed.

Rushing, P. J., and Duffy, J., concurred.