Filed 4/9/14  Chu v. Glenborough 300 ECR CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LI CHING CHU et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>GLENBOROUGH 400 ECR, LLC,<br><br>        Defendant and Respondent. | A139167<br><br>(San Mateo County<br>Super. Ct. No. CIV508888) |

The daughter of Li Ching Chu and Robert Ching Liang Hung (Plaintiffs) died after a fall from an upper floor of the office building where she worked.  The coroner ruled the death a suicide, but Plaintiffs believe their daughter was murdered by coworkers.  Plaintiffs also alleged that dangerous conditions in the office building contributed to her death, and that the building owner suppressed evidence of the murder.  The trial court sustained demurrers to the causes of action against the building owner and Plaintiffs appeal.  We affirm.

## I.  BACKGROUND

Plaintiffs filed this action individually and as successors in interest to their deceased daughter, Cindy K. Hung (Hung).  In their first amended complaint they alleged that, from January 2010 until her death, Hung worked for Tribal Technologies (Tribal), a software development company located in a building at 400 South El Camino Real, San Mateo (the Building).  At approximately 4:45 p.m. on October 21, 2010, Hung's body was found on the rooftop of a Building breezeway.  Although the deputy coroner deemed the death a suicide, Plaintiffs alleged that Hung was murdered by Tribal employees who

1

beat Hung unconscious, dumped her body in the breezeway, and covered up their role in the crime by giving false information to the coroner's office and police investigators. They sued Tribal and 50 Doe Tribal employees for, inter alia, assault, battery, intentional infliction of emotional distress, and negligence.

Respondent Glenborough 400 ECR, LLC (Glenborough) owned and managed the Building. Plaintiffs sued Glenborough for premises liability based on allegations that it allowed the breezeway area to become an area attractive to criminal activity, failed to warn Building invitees of this danger, and failed to use its surveillance capability to observe the assault of Hung and call for assistance before she died. In addition to premises liability, Plaintiffs asserted causes of action against Glenborough for wrongful death and a survival action.

Plaintiffs made similar allegations in their original complaint, and Glenborough demurred on the ground Plaintiffs failed to allege facts showing the criminal attack on Hung was foreseeable to Glenborough. Plaintiffs filed no written opposition, and the trial court sustained the demurrer with leave to amend. Plaintiffs then filed the first amended complaint summarized above, and Glenborough demurred on the same ground. Plaintiffs again failed to file an opposition to the demurrer. Moreover, at the hearing on the demurrer, Plaintiffs' counsel conceded "that the building owner does not have the duty to warn . . . and the harm is not foreseeable." Plaintiffs' counsel, however, argued she had new evidence that Glenborough conspired with Tribal to cover up the murder of Hung. She said, "They have video tapes. They have security personnel who know what—," at which point she was interrupted. The court sustained Glenborough's demurrer without leave to amend, but also granted Plaintiffs leave to assert an obstruction of justice claim against Glenborough in a further amended complaint.

Ultimately, in a verified third amended complaint, Plaintiffs alleged Glenborough's security guards observed the attack on Hung, failed to summon assistance, falsely claimed to investigators that they knew nothing about what had happened to Hung, and intentionally shielded the perpetrators from justice. They further alleged that Glenborough possessed surveillance videotapes of the attack on Hung, but

2

refused to provide them to Plaintiffs and falsely denied their existence. Thus, they alleged, Glenborough had either destroyed or intentionally withheld evidence. Glenborough demurred, arguing that neither state nor federal law recognized a cause of action for obstruction of justice or spoliation of evidence. The trial court agreed and sustained the demurrer without leave to amend. The court then entered a judgment dismissing the case against Glenborough with prejudice.

## II. DISCUSSION

Plaintiffs argue the court erred in sustaining demurrers of their causes of action for premises liability and obstruction of justice and erred in dismissing their case against Glenborough with prejudice.

"We review [orders sustaining demurrers] de novo, exercising our independent judgment as to whether, as a matter of law, the complaint states a cause of action on any available legal theory. [Citation.] In doing so, we assume the truth of all material factual allegations together with those matters subject to judicial notice. [Citation.] 'If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]' [Citation.]" (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.)

A.   *Dismissal of Premises Liability Claim*

Glenborough argues Plaintiffs forfeited their challenge to the court's dismissal of their premises liability claim by failing to file a timely appeal from the November 2012 order that sustained Glenborough's demurrer to that cause of action. "The sole Order from which [Plaintiffs] have taken their appeal is that of May 20, 2013, [which] dismissed the one remaining cause of action against Glenborough for obstruction of justice." In fact, Plaintiffs appealed from the "[j]udgment of dismissal after an order sustaining a demurrer." Although their July 3, 2013 notice of appeal was premature, as

3

the judgment was not entered until August 2013, we subsequently construed the appeal as taken from the judgment and denied Glenborough's motion to dismiss. Because orders sustaining demurrers are not appealable until a judgment of dismissal is entered, Plaintiffs' appeal from the judgment was timely as to both of the court's orders sustaining demurrers, i.e., both the November 2012 and May 2013 orders. (See *Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202; Code Civ. Proc., § 904.1, subd. (a)(1).)

We nevertheless agree that Plaintiffs have forfeited their challenge to the dismissal of the premises liability cause of action for other reasons. Plaintiffs filed no opposition to either of Glenborough's two demurrers to that cause of action. At the hearing on the second demurrer, they expressly *conceded* that the cause of action was properly dismissed because a property owner has no duty to warn and the criminal activity that befell Hung was not foreseeable to Glenborough. They did not argue that they could allege new facts to support a valid premises liability claim or seek leave to do so.

On appeal, Plaintiffs argue the premises liability claim should have been sustained on allegations that Glenborough guards actually observed Hung's fall but failed to summon help and then falsely told investigators they had seen nothing.[1] Plaintiffs, however, did not make similar allegations in their original or first amended complaints and they did not ask the court for leave to amend their complaint to make such allegations in support of a premises liability claim. Although Plaintiffs made the allegations in their

---

[1] Plaintiffs allege on appeal: "When [Hung's] body fell onto the breezeway of the Building in broad daylight . . . , several occupants of the Building observed her fall through the windows of their offices. . . . [T]he Building has a transparent all-glass exterior. Glenborough's security personnel stated to investigators that they saw and heard nothing. As a result, no one called for help and [Hung] was left to die on the breezeway of the Building." While the argument is not logical as written—the guards' statements to investigators (*after* authorities had responded to the incident) could not have *resulted in* the failure of anyone in the Building to call for help—we infer that Plaintiffs intend to argue that the guards must have observed Hung's fall yet failed to call for help and that they later falsely denied to investigators that they had observed the fall. Plaintiffs made similar allegations in their third amended complaint.

4

*third* amended complaint, by that time the trial court had already sustained the demurrer to their premises liability claim without leave to amend. Plaintiffs asserted only an obstruction of justice claim against Glenborough in their third amended complaint, and they never asked the court to reconsider its dismissal of the premises liability claim. We ordinarily will not consider an argument first raised on appeal. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) Plaintiffs' argument that the premises liability claim should have been allowed to proceed on the allegations they make on appeal has been forfeited.

In any event, the court's ruling on the issue is legally correct. (See *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674–675 [commercial landlords have a duty to tenants and tenants' employees to "take reasonable steps to secure common areas [of their property] against *foreseeable* criminal acts of third parties that are likely to occur in the absence of such precautionary measures" (italics added)], disapproved on another ground by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5; *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 244, 248 [commercial landlords' duty to take reasonable action during ongoing criminal activity depends in part on foreseeability of the harm]; see also *id.* at p. 249 [because a business " 'chooses to have a security program,' " including a roving security guard, does not signify assumption of "a duty to protect invitees from third party violence"]; *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 158 ["foreseeability . . . is tested by what the defendant knows, not what the defendant could have or should have learned"].)

B.      *Dismissal of Obstruction of Justice Claim*

Plaintiffs also argue the trial court erred in sustaining Glenborough's demurrer to their obstruction of justice claim. We again affirm.

As stated *ante*, Plaintiffs alleged in their third amended complaint that Glenborough either destroyed or intentionally withheld surveillance videotapes of the attack on Hung. Moreover, they alleged that Glenborough's security guards observed the attack on Hung but failed to summon assistance and—pursuant to a Glenborough "gag order" to its employees—falsely claimed to investigators that they knew nothing about what had happened to Hung, intentionally shielding the perpetrators from justice.

5

Plaintiffs asserted that Glenborough engaged in obstruction of justice in violation of title 18 United States Code sections 1503 and 1510 by "destroying evidence, wrongful withholding of evidence and information in its possession and disseminating untrue, false and misleading written and oral statements concerning [Hung's] murder by Tribal defendants."

Glenborough demurred, arguing: "both a plain reading of the text and also case law interpreting 18 U.S.C. §§ 1503 and 1510 demonstrate that there is neither an express nor implied right of private action in either of these sections of Title 18. Further, California does not recognize any private right of action for obstruction of justice under state law or under common law." In opposition, Plaintiffs cited *Smith v. Superior Court* (1984) 151 Cal.App.3d 491 (*Smith*), but Glenborough noted in its reply papers that *Smith* had been overruled in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 (*Cedars-Sinai*). Glenborough also wrote that Plaintiffs' obstruction claim was based solely on Glenborough's discovery response stating it was not aware of any surveillance video of the incident that led to Hung's death.

The trial court sustained the demurrer without leave to amend, explaining: "No private right of action exists that is based on the federal statutes cited . . . . Plaintiff cites no authority holding that a civil cause of action exists based on interference with a law enforcement investigation, or that Defendants owed any legally recognized duty of care to Plaintiffs to allow a criminal prosecution to occur. [Citation.] Finally, no civil cause of action exists based on incomplete or false responses to interrogatories."

On appeal, Plaintiffs premise their obstruction of justice claim solely on "Glenborough's refusal to produce evidence in its sole possession," specifically referencing surveillance videotapes. That is, Plaintiffs have abandoned their allegations of destruction of the video recordings and of suppression of information that could be provided by Glenborough guards who purportedly observed the attack on Hung. As to their legal theory, Plaintiffs have abandoned reliance on the federal statutes on appeal. They rely solely on *Smith, supra,* 151 Cal.App.3d 491 and related cases. In *Smith*, the Second District Court of Appeal first recognized a tort cause of action for intentional

spoliation of evidence. (*Id.* at p. 496.) Unfortunately, they continue to ignore the fact that *Smith* was disapproved by the California Supreme Court in *Cedars-Sinai, supra,* 18 Cal.4th at page 18, footnote 4.

The *Cedars-Sinai* court held that "intentional spoliation—that is, intentional destruction or suppression—of evidence" is not a cognizable tort when it is "committed by a party to the underlying cause of action to which the evidence is relevant and when the spoliation is or reasonably should have been discovered before the conclusion of the underlying litigation." (*Cedars-Sinai, supra,* 18 Cal.4th at p. 4.) More pertinent here, the Supreme Court later held that "no tort cause of action will lie for intentional third party spoliation of evidence," that is, "spoliation of evidence relevant to plaintiff's causes of action against . . . other defendants." (*Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 466, 469 (*Temple*).) Plaintiffs seek to hold Glenborough civilly liable for withholding surveillance videotapes that Plaintiffs insist are relevant evidence on their tort claims against other defendants, Tribal and Tribal employees. *Temple* clearly establishes that no such cause of action is cognizable in California.

As *Temple* explains, Plaintiffs have other remedies if their allegations are true. "[I]f the third party spoliator is acting at the behest of a party, a negative inference may be drawn against that party [citations],[2] and the full panoply of discovery sanctions may apply against the party under certain circumstances. [Citation.] . . . [W]hen spoliation is committed by a nonparty acting independently, . . . a plaintiff could bring before the jury the fact that relevant evidence intentionally was destroyed by another, in order to rebut any contention that the *plaintiff's* failure to produce the evidence would support an inference that the evidence was adverse to plaintiff's cause. (See Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."].)" (*Temple, supra,* 20 Cal.4th at p. 474.) At the time obstruction

---

[2] See Evidence Code, section 413 (to determine "what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's . . . willful suppression of evidence relating thereto").

7

of justice by Glenborough was alleged, Plaintiffs had not even attempted to obtain the videotapes by way of a motion to compel discovery.  The tort claim was neither the proper nor the only means of seeking redress against Glenborough for alleged suppression of evidence.  The trial court did not err in dismissing the claim.

C.      *Dismissal of Claims Against Glenborough with Prejudice*

Finally, Plaintiffs argue the trial court erred by dismissing their claims against Glenborough with prejudice.  They cite Code of Civil Procedure sections 583.410 and 583.420 and California Rules of Court, rule 3.1342, but these statutes and the court rule apply to dismissals for delay in prosecution.  Plaintiffs' claims against Glenborough were dismissed for failure to state claims for which relief may be granted.  In such a circumstance, dismissal with prejudice is appropriate.  (See Code Civ. Proc., § 581, subd. (f)(1); *Cano v. Glover* (2006) 143 Cal.App.4th 326, 329–330.)

### III.      DISPOSITION

The judgment is affirmed.  Plaintiffs shall bear Glenborough's costs on appeal.


_____
Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Simons, J.