Filed 7/8/14  Rivera v. JPMorgan  Chase CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| EFRAIN RIVERA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>    Defendants and Respondents. | H038546<br>(Santa Clara County<br>Super. Ct. No. 1-11-CV198993) |

Plaintiff Efrain Rivera brought this action for breach of contract and specific performance after his home was sold in a nonjudicial foreclosure sale.  The superior court sustained the demurrer of defendants JPMorgan Chase Bank, N.A. (Chase) and Deutsche Bank National Trust Company (Deutsche Bank) to plaintiff's second amended complaint without leave to amend and entered a judgment of dismissal.  Plaintiff appeals, contending that he stated viable contract causes of action arising from a loan modification agreement between him and Chase.  He alternatively argues that the court abused its discretion by giving him no opportunity to amend his pleading to allege that his own performance was excused or waived.  We find no error in the superior court's conclusion that plaintiff cannot state a legally sufficient contract claim even with his proposed amendment.  We must therefore affirm the judgment of dismissal.

*Background*

Because this appeal arises from the sustaining of a demurrer, we summarize the underlying facts as they are stated in the operative pleading, the second amended complaint. Toward this end "we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

Plaintiff asserted two causes of action, for specific performance and for breach of contract. Both were based on a loan modification agreement (LMA or Agreement) he had executed with Chase Home Finance LLC, which was the current lender on the mortgage applicable to his San Jose home.[1] Plaintiff alleged that he fell behind in his mortgage payments on his original 2006 loan, due to the "downturn in the economy and the triggering of higher monthly payments" on his subprime loan. A notice of default was recorded on February 9, 2009. The LMA, executed in December 2009, called for a waiver of all late charges and suspension of any foreclosure activities, and it set forth a new schedule of interest rate adjustments beginning February 1, 2010. The first five years called for a monthly interest-only payment of $1,524.54, due on the first of each month. Except as modified in the Agreement, the terms of the original loan documents were expressly reaffirmed.

Plaintiff then began paying varying amounts to Chase by cashier's check: $2,200 on February 2, 2010; $1,800 on March 8; $2,200 on both April 12 and May 21; $3,000 on

---

[1] Chase Home Finance LLC was apparently succeeded by merger by JPMorgan Chase Bank, N.A. (collectively, Chase). In 2006 Deutsche Bank National Trust Company was assigned the deed of trust and California Reconveyance Company (CRC) was substituted as trustee. All but CRC are defendants and respondents in plaintiff's action.

2

August 26; $2,200 on September 21; and $2,200 on November 1.[2] The last check was returned, however, with a letter stating that Chase could not accept the payment because it was "insufficient to cure default." At some point Cesar Cadena, who had assisted plaintiff in the loan modification, contacted Chase on plaintiff's behalf and was told that Chase representatives "were looking into the return of the November payment."

On November 22, 2010, a Notice of Trustee's Sale was recorded, warning plaintiff that the property would be sold on December 14, 2010. Upon further communication through Cadena, however, Chase agreed to postpone the sale until the following January pending its investigation. On January 14, 2011, Cadena was told that plaintiff should make a payment while the investigation was ongoing. Plaintiff mailed a cashier's check that day, paying Chase $2,200. The check was never returned. Nevertheless, that very day plaintiff's residence was sold. The Trustee's Deed Upon Sale was recorded on January 28, 2011.

The course of events did not end there. In response to a telephone call on January 28, 2011, Chase assured plaintiff that the "foreclosure issue" was being reviewed, and it identified Rosette McKithen as the Chase representative assigned to the "issue." Sometime after February 4, 2011 McKithen informed plaintiff that "there was no modification in place because Plaintiff had missed a payment in September 2009." On March 10, 2011, plaintiff sent McKithen a copy of an endorsed $3,100 check he had sent Chase on October 29, 2009, which he represented to be proof of the September 2009 payment.

---

[2] He further represented in the complaint that he paid $1,550 on June 15, 2010, and on July 9, 2010, but the exhibits referred to his complaint disclose that these checks had been paid in 2009, not 2010.

3

McKithen, however, continued to state incorrectly that "the modification was never in effect." On March 29, 2011, plaintiff received a three-day notice to vacate the premises, followed on April 9 by an unlawful detainer action.

Plaintiff filed this action against Chase and the trustee, Deutsche Bank, on April 15, 2011, requesting specific performance of the LMA, quiet title, injunctive relief, and damages for breach of contract. On June 9, 2011, he obtained a preliminary injunction staying the transfer of title to the property. Upon defendants' notice of demurrer, plaintiff filed a first amended complaint, which sought only specific performance and damages for defendants' alleged breach of the LMA. The superior court, however, sustained defendants' next demurrer with leave to amend, ruling that plaintiff's attachments showed that he himself had not performed under the Agreement, having apparently missed the October 2010 payment.

Plaintiff filed his second amended complaint on January 18, 2012, again asserting specific performance and breach of contract. As he had in his prior pleadings, he alleged that he had "performed each and every term under the loan modification agreement." This statement was predicated on the further assertion that the LMA did not contain a "time is of the essence" clause and that the original promissory note and deed of trust had contained a grace period and late-payment provision which had not been modified by the LMA.

Defendants again demurred, contending that it was plaintiff who was in breach, not defendants, because he had failed to make the monthly payments on the dates they were due. The grace period was of no concern, defendants argued, because the LMA "did expressly provide the specific payment amounts and due dates for each modified monthly payment." The superior court agreed, and this time it sustained the demurrer without leave to amend. From the ensuing judgment of dismissal, plaintiff brought this timely appeal.

4

*Discussion*

## 1. Standard and Scope of Review

"On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. . . . [¶] Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations. [Citation.] Whether the plaintiff will be able to prove these allegations is not relevant; our focus is on the *legal* sufficiency of the complaint." (*Los Altos Golf and Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203; see also *Debrunner v. Deutsche Nat. Trust Co.* (2012) 204 Cal.App.4th 433, 438-439.) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We do not, however, assume the truth of "mere contentions or assertions contradicted by judicially noticeable facts." (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; see also *Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040 ["when the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former"].) Nor do we assume the truth of "contentions, deductions or conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) Finally, when the demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*Ibid.; Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Sandhu v. Lockheed Missiles & Space Co.* (1994) 26 Cal.App.4th 846, 850.)

## 2. Contract Causes of Action

As noted earlier, plaintiff's second amended complaint asserted only two causes of action: specific performance and breach of contract, both pertaining to the LMA. In his effort to defend his pleading, plaintiff emphasizes that the original provisions of the note

and deed of trust were retained to the extent that the LMA did not alter them. Thus, he argues, he still had a 15-day grace period before the lender could initiate foreclosure.

Plaintiff unfortunately continues to characterize his action as one rooted in contract. But whether viewed as breach of contract or specific performance, plaintiff's pleading cannot be sustained under either contract theory. Both breach of contract and specific performance require the plaintiff to have performed or be excused from nonperformance. In order to state a cause of action for breach of contract, a plaintiff must allege not only the existence of a contract and the defendant's breach, but also the plaintiff's own performance or excuse for nonperformance, as well as resulting damages. (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 921.) And by statute, specific performance "cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated, in which case specific performance may be compelled, upon full compensation being made for the default." (Civ. Code, § 3392.) Of the seven payments plaintiff made to Chase, only one was on the first of the month; three were beyond the grace period provided in the Note, and one was omitted altogether. Thus, we agree with the superior court that plaintiff's allegation that he "performed each and every term under the loan modification agreement" cannot be sustained.

Plaintiff maintains, however, that Chase's contractual right to foreclose was precluded by its failure to comply with Civil Code section 2924 et seq., by filing a new notice of default. Even assuming a second notice of default is required by implication in the foreclosure statutes, plaintiff does not demonstrate how this obligation excuses his earlier nonperformance of his contractual obligation. This is not, as plaintiff suggests, a matter of ambiguous terms that are subject to competing interpretations. Plaintiff's complaint and the attached copies of his checks establish that plaintiff simply did not comply with the conditions of the LMA, including the terms incorporated into that

6

document from the note and deed of trust.  Plaintiff's failure to pay the amounts due under the Agreement were not excused by any acts of Chase; Chase did not invite his nonperformance; nor did it prevent, interfere with, or delay his compliance with his monthly payment obligation until its rejection of the November 2010 check, when he was already in breach.  Thus, plaintiff's reliance on Civil Code section 1511 to excuse his nonperformance is misplaced.[3]  Plaintiff's understanding of his existing deficiency and his effort to cure his default were arguably impeded by McKithen's misstatements and misleading explanations of the problem; but plaintiff's nonperformance had already occurred when Chase issued the notice of trustee's sale.

Plaintiff further contends that it was an abuse of discretion not to allow him to amend his complaint again.  His objective is not to state a new theory (such as wrongful foreclosure) pertaining to defects in the foreclosure process itself, but only to provide "an adequate pleading of the element of performance or excuse/waiver."  Like the superior court, we are unable to discern how plaintiff will be able to establish this element.  As discussed, the failure to file a new notice of default, even if required under the foreclosure statutes, did not excuse plaintiff's earlier failure to perform his payment

---

[3] Civil Code section 1511 states: "The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate: [¶] 1. When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse; however, the parties may expressly require in a contract that the party relying on the provisions of this paragraph give written notice to the other party or parties, within a reasonable time after the occurrence of the event excusing performance, of an intention to claim an extension of time or of an intention to bring suit or of any other similar or related intent, provided the requirement of such notice is reasonable and just; [¶] 2. When it is prevented or delayed by an irresistible, superhuman cause, or by the act of public enemies of this state or of the United States, unless the parties have expressly agreed to the contrary; or, [¶] 3. When the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time."

obligation under the LMA. Waiver is also not available to excuse plaintiff's nonperformance, because both the note and deed of trust provided that the lender's forbearance, extensions of time, or acceptance of late payment would not create a waiver of its rights. The note itself clearly stated, "Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time."

It is plaintiff's burden to show "in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Plaintiff may make this showing for the first time on appeal. (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 971; *Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1623; *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 668.) In this case, however, plaintiff has failed to do so.

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

9